AUGUSTUS ROSS, Executor *et al.*, Respondents, *v.* DE WITT A. GLEASON *et al.*, Appellants.

*Court of Appeals, October* 8, 1889.

Affirming 44 Hun, 626, Mem.

*Will. Undue influence.*—A change in a testator's will, even though unaccounted for, presents no ground for contest, unless brought about by fraud or deceit, or an influence unfairly exercised, so that the words, though the words of the testator, represent the mind of another person.

Appeal from a judgment of the general term, reversing a decree of the surrogate, refusing probate to a will, on the ground that it was procured by fraud and undue influence,

and remitting the proceedings with directions to admit second codicil to probate.

*E. Countryman*, for appellants.

*Albert F. Gladding*, for respondents.

DANFORTH, J.— Alexander Foster made his will on the 5th of December, 1883, and a codicil on the 14th of March, 1884. He made what purports to be a codicil on the 24th of June, 1884. He died on the 15th of August, 1884, and the will and codicil of March 14th were admitted to probate without objection, but the paper of June 24, 1884, was objected to by Elizabeth E. Lee and De Witt A. Gleason on the grounds:

*First.* That the testator was at the time of unsound mind and incompetent to execute the same.

*Second.* That its execution was procured by fraud and undue influence.

*Third.* That it was not properly executed as a codicil.

The second ground was approved by the surrogate, and for that reason probate was refused. The general term reversed the decision of the surrogate and directed the paper of June 24th to be admitted to probate as a second codicil. The appellants' counsel urges against their decision the same ground which prevailed with the surrogate and contends that the codicil of June 24th was procured by undue influence over the decedent. The appellants are Elizabeth E. Lee and De Witt A. Gleason. They were two of the four children of John R. Gleason, who was a nephew of the decedent. They were beneficiaries under the will and first codicil, and contestants before the surrogate against the probate of the second codicil. By the will (December 5, 1883), the testator says: "I give and bequeath to each of the four children of my nephew, John R. Gleason, the sum of five hundred dollars, provided De Witt A. Gleason, one of such children, within sixty days after my death and upon the request of my executor, reassigns to my executor a

26

mortgage on the Methodist Church at Norwich, N. Y., and in case such De Witt A. Gleason does not within sixty days deliver and properly assign such bond and mortgage to my executor, the bequest to such four children shall be void, and the money shall be disposed of under the residuary clause of this will, but nothing herein contained shall be construed as releasing any right or interest in such bond and mortgage to such De Witt A. Gleason."

By the codicil of March 14th, 1884, he confirmed the will in every respect, except as follows, saying : " I hereby will and direct, that in case De Witt A. Gleason and Clark Gleason, or either of them, present any claim or debt or demand against my estate, of any name or nature whatsoever, except a claim for the legacy bequeathed to them in my said will, that then and in that case the amount of any such claim, debt or demand shall be deducted from the sum bequeathed to one or both presenting such claim, debt or demand ; and such legacy shall be reduced by the amount thereof and only the remainder paid by my executor from my estate.   And that if any other person shall make or present a claim which shall have been assigned by said De Witt or Clark Gleason, that the amount thereof shall likewise be deducted from the legacy bequeathed in my will to the person making such assignment."

Clark Gleason, thus named, was also a son of John R. Gleason, and, consequently, one of the four children referred to in the will.   By the second codicil the testator ratified the will, except as to the children of John R. Gleason.   As to the provision in their favor, he says :   " I hereby revoke and annul the bequest mentioned in third division or paragraph of my said will, whereby, in said will, I bequeathed to each of the four children of my nephew, John R. Gleason, the sum of $500, and hereby revoke all bequests and devises and provisions in my said will in favor of the children of said John R. Gleason, and hereby will that said $2,000 mentioned in said third division shall go into the residuary

fund or bequest mentioned in said will, and to be disposed of as therein mentioned and as the ' rest and residue ' is therein devised and bequeathed and directed."

This change led to the inquiry which resulted in the opposition before the surrogate. Of itself it seems a natural sequence of the apprehension manifested in the will, and the caution which dictated the provision in the first codicil. By the will the gift was accompanied by a proviso and a penalty, and by the first codicil other safeguards are interposed between the possible adverse pecuniary claims of his beneficiaries, either directly or by their assigns. It is not denied that the testator was at all these times of sound mind, and he was, according to the evidence, perfectly competent to exert and direct its operations. Certainly the various clauses of the will and codicil indicate a firm determination to provide against certain apprehended or possible claims or contentions on the part of those persons to whom he refers. They are the words of a man acting advisedly and guarding against a state of things not then fully appearing, but which, after his death, might be made to confront his representatives. In fear of that, they might naturally have been written.

The contention of the appellant is that fear of another sort actuated him ; that his mind was not free, but moved by fear or fraud, or influence, or fear and fraud joined. What his mind was is easily discoverable by circumstances, and we find nothing whatever to show that the change was either an unnatural one or contrary to his intent.

By an earlier will (of 1879) he had given to the four children $2,000 to be divided between them. The same sum, its division more specifically provided for, was given by the will of December, 1883, but qualified by the condition already recited, in respect to a surrender by De Witt A. Gleason of the Methodist church mortgage. It belonged to the testator and was for $5,000. It appears that before the 14th of March, 1884, he had placed it in the hands of

De Witt A. Gleason, and given him written authority to sell and dispose of it, " and for his services in the matter as heretofore rendered," agreed to allow him one-half of the net proceeds received by him on its sale. Mr. Foster was disappointed with Gleason's management of the business, and on the 14th of March withdrew by notice in writing the authority so conferred and required the return of the bond and mortgage. This was served upon Gleason. There is an obvious and natural connection between this revocation and the requirement in the codicil of the same date.

By subsequent transactions, in which Gleason and Lee, the husband of Mrs. Lee, participated, the church property was sold, and such an arrangement of the church debts made as enabled Mr. Lee to realize a sum amounting, as estimated by the testator, to $3,000, and all of that he attributed to the control by Lee and Gleason of his $5,000 mortgage. Something at least was realized, and whether the testator is mistaken in the amount or not is quite immaterial. Enough had taken place between himself and those persons, whether well interpreted by him or not, to account for any change he might choose to make in the direction of his gifts. But if unaccounted for, that change would present no ground for contest, unless brought about by fraud, or deceit, or an influence unfairly exercised, so that the words, although the words of the testator, represented the mind of another. There is no evidence in the record which, however viewed, would permit that conclusion or be deemed sufficient in law to defeat a testament. The finding of the surrogate to the contrary, and which led to his decree, is, as we understand the testimony, without support. The judgment of the general term is to that effect, and it should, we think, be affirmed, with costs to be paid by the appellant.

All concur.